UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:19-cv-20583-GAYLES/OTAZO-REYES

CHRISTINE KESSLER,

Plaintiff,

v.

NCL (BAHAMAS) LTD., a Bermuda corporation,
d/b/a NORWEGIAN CRUISE LINES,

Defendant.
_____/

## PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO DAUBERT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff CHRISTINE KESSLER through undersigned counsel moves to exclude pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the anticipated testimony of Robert B. Forney, Jr., Ph.D., a forensic toxicologist disclosed as an expert witness by Defendant NCL.

This case arises from a slip and fall on NCL's passenger cruise vessel the "BREAKAWAY" on January 8, 2019. Ms. KESSLER, a passenger on the vessel, consumed alcoholic beverages during the day at an onboard restaurant and casino. At approximately 4:30 P.M. ship's time, Ms. Kessler went to the onboard spa in order to use a therapy pool. While walking in the spa toward the pool, she slipped on water and fell, sustaining serious injuries including a comminuted right femur fracture. At approximately 10:15 P.M. ship's time, over five hours after Ms. Kessler fell, a nurse in the ship's medical center administered two breath tests for alcohol. No breath testing or other form of alcohol testing was administered to Ms. Kessler

before the 10:15 P.M. test, no blood was drawn onboard for a blood test, and none of the classical clinical and behavioral signs of alcohol abuse noted in the shipboard medical records when she was taken to the ship's medical center.

NCL has retained Dr. Forney, a forensic toxicologist from Ohio, to express opinions concerning Ms. Kessler's alcohol consumption on the day of the fall and state of sobriety at the time the breath test was taken. On the basis of the breath test results, without a blood test, and assumptions about Ms. Kessler's alcohol consumption during the day of the fall, Dr. Forney speculates that Ms. Kessler was impaired by alcohol consumption at the time of her fall and that this impairment contributed to her fall. (Exhibit 1, Expert Report of Robert B. Forney, Ph.D. at Page 5 ¶9). He has submitted a report summarizing his opinions. While the report contains references and calculations, on its face there are critical gaps in Dr. Forney's methodology and in the foundation for his opinions. His opinions are unreliable and insufficiently supported to be admissible.

Pursuant to Federal Rule of Evidence 702, *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court is to exercise a gatekeeping function, ensuring "that a witness tendered as an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Masferrer*, 367 Supp.2d 1365, 1371 (S.D. Fla. 2005). The Court, in considering whether to allow or limit expert testimony, must consider: 1) whether the experts are qualified to testify competently regarding the matters they address; 2) whether the expert's methodology is sufficiently reliable; and 3) whether the proposed testimony will assist the trier of fact, through the application of specialized expertise, to

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcross Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *Masferrer*, 367 F.Supp.2d at 1371n.4. The Court "in all cases of proffered expert testimony must find that it is properly grounded, well reasoned, and not speculative before it can be admitted." *Masferrer*, 367 F.Supp.2d at 1373, *quoting* FRE 702, advisory committee note, 2000. The burden is on the proponent of the expert testimony to establish to the satisfaction of the Court that the testimony meets the threshold standards of qualification, reliability and helpfulness. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999); *Frazier*, 387 F.3d at 1260.

Furthermore, even if expert testimony is deemed to meet the minimum standards of qualification, reliability and helpfulness under Rule 702 and *Daubert*, the opinion may still be excluded under Federal Rule of Evidence 403 if its probative value is substantially outweighed by its potential to confuse or mislead the jury. Since expert testimony "may be assigned talismanic significance in the eyes of lay jurors," the Court must "take care to weigh the value of such evidence against its potential to mislead or confuse." *Masferrer*, 367 F.Supp.2d at 1374, *Frazier*, 387 F.3d at 1263. Rigorous performance of the gatekeeping function under Rules 702 and 403"is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *Masferrer*, 367 F.Supp.2d at 1371.

There is no direct evidence of Ms. Kessler's blood alcohol level at the time she fell and no onboard alcohol testing was done of her blood. As noted above, Dr. Forney attempts to reconstruct a hypothetical blood alcohol level at the time of the fall, 4:30 P.M., from the results of breath (not blood) tests taken over five hours later, combined with his interpretation of Ms.

Kessler's testimony concerning her alcohol consumption on the day of the fall and assumptions about the rate of Ms. Kessler's alcohol absorption and metabolization. (Forney Report at Pages 3-5).  He concludes on the basis of this retrojection that Ms. Kessler was intoxicated to the point of impairment at the time of her fall.  The report goes further and expresses speculative opinions about the cause of Ms. Kessler's fall, ignoring the wet slippery floor and assigning causation to alcohol intoxication.  Thus, Dr. Forney attempts to stretch his background in toxicology to generate speculative opinions about accident reconstruction, an area beyond his expertise.  Obvious as it is that there is no basis for such speculation, a closer look at his opinions even within his field of toxicology reveals that they are insufficiently supported and not reliable.

Dr. Forney's reconstruction of a supposed earlier state of intoxication from a breath test taken hours after the relevant events is fraught with methodological difficulties, as noted in case law on this issue. *See, e.g., Loan v. Prudential Ins. Co. of America*, 370 Fed. Appx. 592, 596 (6th Cir. 2010)("Plaintiffs cite expert treatises detailing the unreliable nature of moving from an estimated BAC [blood alcohol concentration] value to an assessment of the degree of intoxication during the relevant period."); *Gueorguiev v. United States Life Ins. Co.*, 2016 U.S. DIST. LEXIS 144469 *15-16, 2016 WL 6092896 (E.D. Mich., Southern Div. Case No. 15-cv-13676, October 19, 2016), *citing Loan* ("Like the plaintiffs in Loan, Plaintiff also cites to authority 'detailing the unreliable nature of moving from an estimated BAC value to an assessment of the degree of intoxication during the relevant period.'").  Assessment of a reconstructed previous blood alcohol concentration, even from a later alcohol test on drawn blood, requires consideration of multiple factors affecting the rate of alcohol absorption and metabolization, such as "food intake, type and quantity of alcohol, weight, sex, body fat

percentage, and rate of absorption." *Loan*, 370 Fed. Appx. at 596; *Gueorguiev*, 2016 U.S. DIST. LEXIS 144469 at *15.

The weaknesses in the basis for his opinion are magnified in this case because no blood alcohol testing on Ms. Kessler was performed. Dr. Forney can only attempt to reconstruct a hypothetical blood alcohol level at the time of Ms. Kessler's fall from a breath (not blood) alcohol test many hours later. Dr. Forney himself has acknowledged the problematic nature of reconstructing prior blood alcohol levels from later breath alcohol results. *See Garriott's Medicolegal Aspects of Alcohol, Sixth Edition* (2015) (*Garriott*) at 87 ("Breath-alcohol instruments should not be used in pharmokinetic studies to estimate blood alcohol concentrations."). Dr. Forney was a contributing author for this work.

In addition to the use of breath test results hours after the fall to reconstruct indirectly and unreliably a prior blood alcohol level, there are other problems with Dr. Forney's methodology and with the foundation for his opinions. Ms. Kessler was admittedly obese, with a body mass index of 33.9 at the time of the fall. Dr. Forney did not take Ms. Kessler's obesity into account in reconstructing her alcohol absorption rate, despite the acknowledged importance of body mass index in determining the rate of alcohol absorption, as noted in *Loan* and *Gueorguiev*, and the availability of the data in the medical records. While Dr. Forney assumed generally that Ms. Kessler would have absorbed alcohol faster than an average person due to her having had gastric bypass surgery, he did not attempt to quantify this assumed effect or its quantitative impact on his retrojection. (Forney Report at Page 3 ¶3). Nor is there any reliable data to measure the alcohol absorption rate differences between persons who have had gastric bypass and those who have not. Fundamental to any assessment of blood alcohol status is obtaining information about

5

the food eaten and timing of the intake. Dr. Forney also did not assess Ms. Kessler's food intake on the day of the fall, even though she had admittedly consumed at least some of her alcoholic beverages in onboard restaurants. (Forney Report at Page 2). Dr. Forney assumed that Ms. Kessler by the time of her fall had absorbed all of the alcohol she had previously consumed that day, a problematic assumption given the lack of quantification of Ms. Kessler's gastric emptying rate and previous food consumption.

Dr. Forney assumed that Ms. Kessler excreted alcohol at the rate of 0.015% per hour, without acknowledging that the rate of alcohol excretion is highly variable between individuals and that no specific excretion rate was calculated for Ms. Kessler. Uncertainty as to the excretion rate increases the uncertainty of any retroactively reconstructed blood alcohol level. Dr. Forney made no attempt to determine the time of maximum blood alcohol concentration (Cmax) for Ms. Kessler, another critical factor in reconstructing past blood alcohol concentrations, as previously noted by Dr. Forney himself. *See Garriott* at 105 ("Back-tracking calculations are often a contentious area of forensic alcohol research owing to the many assumptions that must be made about the pharmokinetic profile of ethanol, not least of which is whether Cmax had been reached by the time of [the incident]").

Dr. Forney does not explain or rationalize any of these data gaps in his report. His opinion as to blood alcohol rate at the time of the fall and reconstruction of the hypothetical fall causation are rank speculation unsupported by reliable scientific methodology.

**WHEREFORE**, the Plaintiff requests entry of an order excluding from evidence pursuant to *Daubert* and striking the anticipated expert testimony of Dr. Forney.

CASE NO. 1:19-cv-20583-DPG

## LOCAL RULE 7.1 CERTIFICATE

The undersigned hereby certifies that he has conferred through counsel with all parties or non-parties who may be affected by the relief sought in a good faith effort to resolve the issues raised in the motion but has been unable to do so.

Dated: November 15, 2019
       Miami, FL

Respectfully submitted,

By:   **s/PHILIP M. GERSON**
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
cadkins@gslawusa.com
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
NICHOLAS I. GERSON
Florida Bar No. 20899
ngerson@gslawusa.com
DAVID L. MARKEL
Florida Bar No. 78306
dmarkel@gslawusa.com
RAUL G. DELGADO II
Florida Bar No. 94004
rdelgado@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
Telephone: (305) 371-6000
Facsimile: (305) 371-5749
*Attorneys for Plaintiff*

CASE NO. 1:19-cv-20583-DPG

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically on all attorneys of record on the attached Service List pursuant to the CM/ECF electronic filing system of the Court on this 15th day of November, 2019.

By:   **s/PHILIP M. GERSON**
PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
cadkins@gslawusa.com

CASE NO. 1:19-cv-20583-DPG

## SERVICE LIST
### United States District Court, Southern District of Florida
### CASE NO. 1:19-cv-20583-GAYLES/OTAZO-REYES

| | |
|---|---|
| **Philip M. Gerson, Esq.**<br>Florida Bar No. 127290<br>pgerson@gslawusa.com<br>**Edward S. Schwartz , Esq.**<br>Florida Bar No. 346721<br>eschwartz@gslawusa.com<br>**Nicholas I. Gerson, Esq.**<br>Florida Bar No. 20899<br>ngerson@gslawusa.com<br>**David L. Markel, Esq.**<br>dmarkel@gslawusa.com<br>Florida Bar No. 78306<br>**Raul G. Delgado II, Esq.**<br>Florida Bar No. 94004<br>rdelgado@gslawusa.com<br>Gerson & Schwartz, P.A.<br>1980 Coral Way<br>Miami, Florida 33145<br>Telephone: (305) 371-6000<br>Facsimile: (305) 371-5749<br>***Attorneys for Plaintiff*** | **Noah D. Silverman, Esq.**<br>Florida Bar No. 401277<br>**Jeffrey E. Foreman, Esq.**<br>Florida Bar No. 0240310<br>jforeman@fflegal.com<br>mfonticiella@fflegal.com<br>**Michael Gordon, Esq.**<br>mgordon@fflegal.com<br>ioriz@fflegal.com<br>narguelles@fflegal.com<br>One Biscayne Tower, Suite 2300<br>2 S. Biscayne Blvd.<br>Miami, FL 33131<br>***Attorneys for Defendant*** |